UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CHAMBERS OF
**MICHAEL A. SHIPP**
UNITED STATES MAGISTRATE JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST. ROOM 2042
NEWARK, NJ 07102
973-645-3827

**Not for Publication**

LETTER OPINION AND ORDER

July 23, 2012

**VIA CM/ECF**
All counsel of record

  Re: **Frazier v. Bed Bath & Beyond Inc., et al.**
     **Civil Action No. 10-5398 (WJM) (MAS)**

Dear Counsel:

This matter comes before the Court by way of Plaintiff Frazier's ("Plaintiff" or "Mr. Frazier") Motion for Sanctions to preclude the use of certain documents untimely produced, specifically e-mail communications between Plaintiff and co-worker Lisa Del Rey ("Ms. Del Rey"), pursuant to Federal Rule of Civil Procedure 37 ("Rule 37"). (Docket Entry Number ("Doc. No.") 36 ("Pl.'s Moving Br.").) Defendants Bed Bath and Beyond and Gary Newton ("Defendants" or "BBB") oppose the Motion, arguing that Plaintiff fails to meet the elements required for the imposition of Rule 37 sanctions. (Doc. No. 37 ("Defs.' Opp'n Br.").) For the reasons set forth below, Plaintiff's Motion is denied.

**I. BACKGROUND**

Defendants hired Plaintiff as a Database Administrator in the Internet Technology Department of BBB in May 2007. (Pl.'s Moving Br. 2.) During his employment with BBB, Plaintiff worked with two other database administrators, Ms. Del Rey and David Rubin ("Mr.

Rubin"). (*Id.*) Mr. Rubin worked remotely as an independent contractor. (*Id.*) Plaintiff alleges that on August 11, 2008, he received an e-mail message from Ms. Del Rey entitled "WHY – WHY – WHY!!!!! YOUR FOLK GOTTA BE SO GHETTO?????" (*Id.* at 3.) According to Plaintiff, the e-mail message contained several potentially offensive and racially charged images and depictions of African-Americans with corresponding captions. (*Id.*) Plaintiff also alleges that on November 4, 2008, he received another racist e-mail message from Mr. Rubin, entitled "Ghetto SpongeBob." (*Id.*) The "Ghetto SpongeBob" message contained an image of a deceased victim of Hurricane Katrina, an unclothed African-American male wrapped in a "sponge like mattress." (*Id.*) Mr. Frazier brought these e-mail messages to the attention of Human Resources, which he alleges resulted in retaliation against him and, ultimately, his termination on May 11, 2009. (*Id.* at 3-5.) Plaintiff commenced the instant action on October 10, 2010. (*Id.* at 5.)

At issue in this Motion are documents bates marked BBB/F 860 through BBB/F 894. The documents consist of e-mail messages between Mr. Frazier and Ms. Del Rey, which reflect the nature of their relationship. (*Id.* at 6.) Plaintiff asserts that Defendants failed to produce these documents with their Rule 26 disclosures on April 5, 2011. (*Id.* at 6.) In addition, Plaintiff asserts that his May 19, 2011 Requests for Production of Documents specifically demanded "any all [sic] emails in <u>defendant employer's computer system</u> that refer to or mention Plaintiff Kevin Frazier," yet BBB failed to produce the documents. (*Id.*)

Defendants deposed Plaintiff on December 8, 2011. At that time, Plaintiff had not received the production of BBB/F 860 through BBB/F 894. (*Id.*) During his deposition, Plaintiff testified that Ms. Del Rey was "just a co-worker" and that he and Ms. Del Rey "did walk around the parking lot together." (Pl.'s Moving Br., Ex. C ("Frazier Dep."), 73:5 and 74:14.) In

2

addition, Plaintiff testified that he did not recall Ms. Del Rey confiding any personal issues with him. (Frazier Dep. 74:17-19.) Plaintiff deposed Ms. Del Rey on December 13, 2011. (Pl.'s Moving Br. 6.) According to Defendants, Plaintiff's December 8, 2011 testimony was "belied by Ms. Del Rey's testimony." (Defs.' Opp'n Br. 7.)

The specific time line behind Defendants' production of the documents at issue is not entirely clear. According to the Declaration submitted in conjunction with Defendants' opposition to the within motion, "[o]n or about December 9, 2011," BBB's inside counsel learned that Mr. Frazier had sent a reply to Mr. Rubin's allegedly racist e-mail message. (Defs.' Opp'n Br., Doc. 37-1 ("Wilck Decl.") ¶ 4.) On December 13, 2011, BBB then restored from its backup servers an image of Mr. Frazier's employee e-mail file as of November 4, 2008, the date of the Rubin e-mail message. (Wilck Decl. at ¶ 5.) Mr. Wilck's Declaration further reflects that his personal review of the restored file revealed Frazier's response to the Rubin e-mail message, which BBB produced to Plaintiff on December 14, 2011. (*Id.*) Mr. Wilck's Declaration also provides that outside counsel's review of "that email file" revealed Frazier's replies to the Del Rey e-mail message, which were produced to Plaintiff on January 5, 2012. (*Id.*)

Plaintiff argues that the documents at issue should be precluded pursuant to Rule 37 because: (1) they were not properly produced pursuant to Rule 26; and (2) although specifically requested, Defendants failed to produce the documents in response to Plaintiff's Request for Production of Documents. (Pl.'s Moving Br. 1.) Specifically, Plaintiff asserts that his Request for Production of Documents included a demand for all e-mail messages encompassed in BBB's computer system referring to Plaintiff. (*Id.* at 6.) BBB, however, did not produce the disputed e-mail messages until approximately eleven days prior to the close of discovery and after Mr. Frazier and Ms. Del Rey had been deposed. (*Id.*) Thus, Mr. Frazier contends that Defendants'

3

failure to timely produce the messages prejudiced him because it prevented him from adequately preparing for his deposition and with respect to preparations for trial. (*Id.* at 7.)

Additionally, Plaintiff argues that, as BBB is now able to produce the e-mail messages, these records were "clearly" in BBB's computer files in other locations apart from Mr. Frazier's deleted e-mail messages. As such, Plaintiff argues that Defendants' failure to review deleted e-mail messages is not a legitimate excuse for their non-production. (*Id.* at 10.) In sum, Plaintiff asserts that "[e]ither Defendants knew of these emails prior to Mr. Frazier's deposition and did not disclose them, or Defendant's [sic] never bothered to comply with their Rule 26 and discovery obligations in the first place by not searching Ms. Del Rey's computer files for these emails." (*Id.*)

In opposition to Mr. Frazier's Motion, BBB notes that Defendants opposed Plaintiff's request for all e-mail messages referring to Mr. Frazier as overly broad and unduly burdensome. (Defs.' Opp'n Br. 8.) Moreover, BBB notes that, in response to this objection, Mr. Frazier failed to issue a deficiency letter or to narrow the scope of his request. (*Id.*) Thus, BBB contends that it fully complied with Mr. Frazier's document request. (*Id.*) BBB further asserts that the delay in locating the e-mail messages was the direct result of Mr. Frazier's "selective deletion of these emails while employed by BBB in an apparent effort to hide documents that were damaging to his future claims." (*Id.* at 5.)

In response to Plaintiff's argument that BBB should have searched Ms. Del Rey's e-mail file, BBB asserts that Defendants did retrieve her file, only to find that she too had deleted Plaintiff's replies to the allegedly offensive e-mail message. (*Id.* at 6.) BBB also asserts that after it learned of the possibility of Plaintiff's replies to Ms. Del Rey's e-mail messages on December 9, 2011, it conducted an investigation into the restored file image and located and

produced the restored e-mail messages to Plaintiff on January 5, 2012. (*Id.* at 5.) BBB thus contends that Defendants operated in good faith in timely turning over the materials. (*Id.*) BBB also argues that the production of rebuttal evidence, including further e-mail communications between Mr. Frazier and Ms. Del Rey is not prejudicial because Plaintiff knew of his relationship with his co-worker prior to the deposition and was likewise aware of his responses to the subject e-mail messages. (*Id.* at 8.) BBB requests that the Court deny Plaintiff's Motion in its entirety and grant it attorney's fees for the cost of opposing Plaintiff's Motion. (*Id.* at 9.)

II. **LEGAL STANDARD AND ANALYSIS**

Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26 . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37. The exclusion of critical evidence under Rule 37 has been held to be an extreme sanction, "not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 905 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985) (quoting *Dudley v. S. Jersey Metal, Inc.*, 555 F.2d 96, 99–100 (3d Cir. 1977) (internal citation omitted)).

The Third Circuit has enumerated four factors for review when considering whether a failure to disclose or supplement discovery warrants exclusion under Rule 37(c):

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted; (2) the ability of the party to cure the prejudice; (3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of a case or other cases in court; and (4) bad faith or willfulness in failing to comply with a court order or discovery obligation.

*Ford Motor Co. v. Edgewood Props., Inc.*, No. 06-1278, 2011 WL 5828661, at *3 (D.N.J. Nov. 18, 2011) (citing *Eli Lilly & Co. v. Actavis Elizabeth, LLC*, No. 07-3770, 2010 WL 1849913, at *15 (D.N.J. May 7, 2010)). Here, the Court must analyze these factors in determining whether Defendants' alleged delayed production of the e-mail messages warrants preclusion pursuant to Rule 37(c).

### (1)     Prejudice or Surprise to Mr. Frazier

This District has held that prejudice from failure to file a timely or adequate discovery response may include "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Ford Motor Co.*, 2011 WL 5828661, at *4 (citing *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 105 (D.N.J. 2006)). In the present case, the Court finds that any alleged prejudice or surprise created by allowing BBB's use of the correspondence case does not rise to the level required to warrant Rule 37 sanctions.

The Court first notes that the timeline set forth by Defendants tends to indicate that Defendants may have been on notice prior to Plaintiff's December 8, 2011 deposition that Plaintiff responded to Mr. Rubin's e-mail message. BBB's in-house counsel certified:

> On or about December 9, 2011, I was informed by BBB's outside counsel . . . that during their conversation with David Rubin in advance of his December 15, 2011 deposition, Mr. Rubin stated his recollection that shortly after he mistakenly sent Frazier the allegedly offensive email, Frazier replied indicating that he thought the email was funny. No such reply, however, existed in Frazier's email file.

(Wilck Decl. ¶ 4.)

The pleadings reflect that Plaintiff's deposition took place on December 8, 2011 and BBB's outside counsel notified in-house counsel "[o]n or about December 9, 2011" that Mr. Frazier responded to the allegedly offensive e-mail message. However, neither the Wilck

Declaration nor the motion papers indicate the exact date that outside counsel became aware of Plaintiff's response to the allegedly offensive e-mail message. Therefore, the overall time line is concerning to the Court.

Defendants' brief in opposition to Plaintiff's Motion reveals that BBB restored an image of Mr. Frazier's email file on December 13, 2011. Defendants then produced Mr. Frazier's reply to Mr. Rubin's email on December 14, 2011. (Defs.' Opp'n Br. 5.) However, Defendants did not produce Mr. Frazier's replies to Ms. Del Rey's e-mail message until January 5, 2012. (*Id.*) Defendants note that to its knowledge, "the only emails Frazier deleted out of the approximately eleven thousand (11,000) emails contained in his email file were his reply to the Rubin email and his two replies to the Del Rey email." (*Id.*)

Having considered the arguments, the Court finds that Plaintiff demonstrated surprise under the facts as presented. However, Plaintiff did not demonstrate prejudice that would rise to the level to warrant sanctions. Mr. Frazier drafted and deleted the e-mail messages at issue. As such, he has been aware of their existence since the beginning of this litigation. In addition, Mr. Frazier should have been aware of the nature and extent of his friendship and interactions with Ms. Del Rey. Therefore, after careful consideration, the Court finds that this factor weighs against the imposition of Rule 37 sanctions.

### (2) Ability of BBB to Cure the Prejudice

The Court finds that any prejudice caused by BBB's alleged delay in the production of evidence is curable. Notably, "[c]ourts in this District have held that prejudice and surprise are curable where a witness is made available for a deposition." *See Ford Motor Co.*, 2011 WL 5828661, at *4 (citing *Eli Lilly & Co.*, 2010 WL 1849913, at *9). Here, BBB has offered to reproduce Ms. Del Rey for further deposition, which could cure what limited prejudice may be

experienced due to the delay in the production of the documents. In addition, the Court is willing to permit a limited re-deposition of Plaintiff upon his request. Thus, this Court finds that Plaintiff may have the opportunity to address any prejudice that could potentially be caused by the admission of the e-mail messages. As such, the Court finds that this factor weighs against the imposition of Rule 37 sanctions.

### (3) Extent to which Allowing the Evidence would Disrupt the Orderly and Efficient Trial of this Matter or Another Before this Court

The Court finds that permitting the use of the documents will not disrupt the orderly or efficient trial of this matter. During the February 1, 2012 telephone status conference, the Court granted an extension of discovery, limited to the new documents and the depositions of four additional witnesses requested by BBB. Discovery has been extended only once in this litigation due to complications scheduling Mr. Frazier's deposition after cancellation due to Hurricane Irene. If necessary, the Court will permit another limited discovery extension. Therefore, this Court is not persuaded that permitting limited discovery will unduly extend the litigation in this matter.

### (4) BBB's Bad Faith or Willfulness in Failing to Comply with a Court Order or Discovery Obligation

Plaintiff contends that had BBB searched all of the e-mail messages, the disputed material would have been discovered earlier. However, the disputed e-mail messages were only recovered after BBB decided to obtain an image of Mr. Frazier's employee e-mail file from a backup server and not through the original search of Mr. Frazier's e-mail messages. While the exact timing of the e-mail recovery is not entirely clear, the Court does not find that the facts rise to the level required for Rule 37 sanctions. Moreover, taking into consideration that the disputed e-mail messages were the only three e-mail messages deleted out of approximately eleven

8

thousand (11,000) e-mail messages contained in Mr. Frazier's employee e-mail file, it is reasonable that BBB would not have originally exerted the effort of recovering the file from the backup server. In addition, BBB originally objected to Plaintiff's document request for "all emails in defendant employer's computer system that refer to or mention Plaintiff Kevin Frazier" and Plaintiff did not issue a deficiency letter or raise a dispute with the Court at that time. Therefore, Defendants have not failed to comply with any Court orders in the present case. As such, after careful consideration, the Court finds that this factor weighs against the imposition of Rule 37 sanctions.

### III. CONCLUSION

The Court has carefully considered the pleadings and finds that the delay in production fails to rise to the level required to justify sanctions pursuant to Rule 37. As such, Plaintiff's Motion is denied. Moreover, the Court is not inclined to grant either party attorney's fees or costs in connection with this Motion. Counsel are to meet and confer and shall submit a joint proposed amended scheduling order by **July 30, 2012**.

s/ Michael A. Shipp
**HONORABLE MICHAEL A. SHIPP**
**UNITED STATES MAGISTRATE JUDGE**