UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **KEVIN FRAZIER,**<br><br>   **Plaintiff,**<br><br> v.<br><br>**BED BATH AND BEYOND INC. &**<br>**GARY NEWTON**<br><br>   **Defendants.** | Civ. No. 2:10-05398 (WJM)<br><br>**OPINION** |

  Plaintiff Kevin Frazier, a database administrator who was fired from his job at Bed Bath and Beyond ("BBB"), brings this employment discrimination case against BBB and Frazier's former supervisor, Gary Newton (together "Defendants"). Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants also move for an adverse inference based on spoliation. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The adverse inference is **DENIED**.

## I. BACKGROUND

  On May 7, 2007 Plaintiff Kevin Frazier began working as a database administrator for BBB's SQL team. Defs.' Statement of Undisputed Material Facts ("DSF") ¶ 1, ECF No. 46-1. Frazier's manager was Gary Newton; Newton's manager was David Ortiz. *Id.* ¶ 3. Besides from supervising the SQL team, Newton also supervised the Oracle team and the DB2 team. *Id.* ¶ 32.

Inappropriate Emails
  During his time at BBB, Frazier, who is African-American, received two racially insensitive emails. On August 11, 2008, a co-worker named Denise Del Ray sent Frazier an email containing several offensive images of African-Americans (the "Del Ray Email"). *Id.* ¶ 7. Frazier did not report the email to his supervisor or Human Resources until February 10, 2009. *Id.* ¶ 11.

1

On November 4, 2008, David Rubin, an outside consultant sent Frazier an email with the subject line "Ghetto Spongebob" (the "Rubin Email"). *Id.* ¶ 16. Frazier's reply, "lmao," indicated amusement. *Id.* ¶ 17. One day later, Frazier changed his mind. He forwarded the "Ghetto Spongebob" email to Ortiz and told Ortiz that he was offended by the message. *Id.* ¶ 19. *Id.* Ortiz said he would direct Rubin to stop sending inappropriate emails. *Id.* ¶ 20.

Alleged Acts of Retaliation

On December 16, 2008, more than five weeks after Frazier reported the "Ghetto Spongebob" email to Ortiz, Frazier's on-call schedule was changed. *Id.* ¶ 35. Until that point, Frazier had alternated on-call hours with an outside vendor called Data Futures. *Id.* ¶ 36. Going forward, Frazier would be on-call 24-7. *Id.* ¶ 34. It is undisputed that Frazier's predecessor at BBB had the same on-call schedule. *Id.* ¶ 40. It is undisputed that Frazier's successor at BBB had the same on-call schedule. *Id.* ¶ 41. And it is undisputed that members of the Oracle team and the DB2 had the same on-call schedule. *Id.* ¶¶ 42-43.

Also on December 16, 2008, Frazier was told that his workday, which began at 9 a.m. and ended at 5 p.m., would now begin at 8 a.m. and end at 5 p.m. Pl.'s Statement of Undisputed Materials Facts ("PSF") ¶ 39, ECF No. 51-1; Frazier Transcript 116:24-117:25. At the time, Frazier claims, "everybody else" was working from 9 to 5. Frazier Dep. at 115:1-5, ECF No. 51-4. Specifically, Frazier identified Vinu, Diane, and Lisa as co-workers who worked an eight-hour day. *Id.* at 115:6-11. It is unclear from the record whether Frazier had firsthand knowledge of his colleagues' work hours. Indeed, the colleagues identified by Frazier submitted declarations stating that they worked from 8 a.m. to 5 p.m. Del Rey Declaration, ECF No. 53-2; Thomas Declaration, ECF No. 53-3; McHugh Declaration, ECF No. 53-4; *see also* Newton Declaration, ECF No. 53-1.

The record is not clear when, but probably at some point in Fall 2008, Ortiz asked Frazier to perform an SQL 2008 installation. DSF ¶ 44. In preparation for the installation, BBB enrolled Frazier in a training class. *Id.* ¶ 45. The vendor proceeded to cancel the class a number of times, and BBB told Frazier it planned to find another vendor. *Id.* ¶ 46. On the day Frazier was required to perform the installation, he had yet to take the class. *Id.* ¶ 47.

Though Frazier successfully completed the installation, *id.*, he was concerned about not receiving the necessary training. Ortiz told Frazier that it was not Frazier's place to air his concerns. PSF ¶ 40 (quoting Frazier Dep. at 162:24-163:17). In response, Frazier smiled. *Id.* Ortiz replied: "You know, you need to stop smiling or I'll give you something to smile about." *Id.*

On February 10, 2009, Frazier reported the November 5, 2008 "Ghetto Spongebob" email to BBB's Human Resources Department. DSF ¶ 24. That same

day, Frazier met with Human Resources Manager Denise DiPiano. *Id.* ¶ 25. DiPiano subsequently spoke with both Ortiz and Del Ray. DiPiano learned that Ortiz had instructed Rubin to stop sending inappropriate emails. *Id.* ¶ 30. DiPiano told Del Ray that Del Ray would face severe discipline if she continued to send inappropriate emails. *Id.* ¶ 31.

Not two weeks later, on February 21, 2009, Frazier filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging race discrimination. *Id.* ¶ 51.

<u>Frazier's Performance Review and Subsequent Termination</u>

On Friday, May 8, 2009, Newton sat down with Frazier for a performance review. *Id.* ¶ 54. Frazier received an evaluation of "Meets Expectations," and he was told his salary was being increased. *Id.* ¶¶ 55, 56. The next business day, Frazier was terminated. *Id.* ¶ 68. The parties offer wildly different accounts of the termination.

Defendants offer the following account of his termination: On May 8, 2009, Frazier and Newton met to discuss Frazier's performance review. *Id.* ¶ 54. In 2008, Frazier had received a review of "Meets Expectations+". *Id.* ¶ 53. This time, Frazier was given a review of "Meets Expectations." *Id.* ¶ 55. Frazier accused Newton of lying on the performance review, and he told Newton that the review was retaliatory. Newton Dep. at 80:9-13, 84:16-20, ECF No. 46-4. Before the meeting concluded, Frazier got up and stormed out of the room. DSF ¶ 60. The next business day, Monday, May 11, Frazier stopped by Newton's cubicle at 8:30 a.m. *Id.* ¶ 61. Newton asked if Frazier wanted to continue the performance review meeting, and Frazier said yes. Newton Dep. at 113:14-20. Frazier walked away, but he returned ten minutes later. *Id.* 114:2-5. In an exchange witnessed by co-workers, Frazier proceeded to scream at Newton, call Newton a liar, and refuse to reconvene the performance review meeting. DSF ¶¶ 62-63. The outburst was brought to the attention of BBB Vice President of Human Resources Connie Van Dyke and BBB Director of Corporate Human Resources Paul DePrima. Together, Van Dyke and DePrima decided that DePrima and Newton would meet with Frazier to discuss Frazier's conduct. *Id.* ¶ 65. If Frazier admitted to the conduct described by Newton, Frazier would be terminated. *Id.* ¶ 66. DePrima and Newton proceeded to meet with Frazier. At the meeting, Frazier admitted calling Newton a liar. *Id.* ¶ 69. Based on this acknowledgement, and based on Frazier's refusal to finish his performance review, DePrima fired Frazier on the spot. *Id.*

Frazier offers the following account of his termination: On May 8, 2009, Frazier and Newton sat down for Frazier's performance review. At the meeting, Frazier noted that certain ratings had been downgraded from the previous year. PSF ¶ 58. Frazier told Newton that he disagreed with parts of the review, and that

3

he believed the review was retaliatory. *Id.* ¶¶ 59-60. But Frazier did not call Newton a liar. *Id.* ¶ 64. When the meeting was over, Frazier asked for a copy of his review. *Id.* ¶ 61. He was told he could not have one. *Id.* Frazier had no further interaction with Newton until he met with Newton and DePrima on May 11, 2009. *Id.* ¶ 67. At that meeting, DePrima said: "We can – we feel that we can no longer trust you because of filing EEOC complaints and we know that you are unhappy, so today is your last day." *Id.* (quoting Frazier Tr. at 170:8-14).

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides for summary judgment "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the non-moving party, and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986). The Court considers all evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Andreoli v. Gates*, 482 F.2d 641, 647 (3d Cir. 2007). "Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment." *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972).

## III.   DISCUSSION

The Complaint asserts eight causes of action. Count VIII, which asserts a violation of the Fair Labor Standards Act, was dismissed pursuant to stipulation. ECF No. 33. Counts I, III, and V assert hostile work environment claims under 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) ("Title VII"), and the New Jersey Law Against Discrimination ("NJLAD"). In his opposition brief, Frazier states that he "does not contest dismissal of his racial hostile work environment . . . Counts in the Complaint." Pl.'s Br. at 36 n.11, ECF No. 51. Accordingly, the Court will **DISMISS** Counts I, III, and V **WITH PREJUDICE**.

Defendants move for summary judgment on the remaining claims, Counts II, IV, VI, and VII. Counts II, IV, and VI allege retaliation by both Defendants, in

violation of Section 1981, Title VII, and the NJLAD. Count VII, directed at Newton only, alleges aiding and abetting violations of the NJLAD.

### A.   CLAIMS AGAINST BBB

In Counts II, IV, and VI, Frazier asserts retaliation claims against BBB.[1] Frazier's claims proceed under two theories. First, Frazier argues that his termination was retaliatory. Second, Frazier argues that he was subject to retaliatory harassment.

#### 1.   Retaliatory Termination

The parties offer wildly different accounts of Frazier's termination. Frazier maintains that BBB's Director of Corporate Human Resources told him that he was being fired because of his EEOC complaint. This is enough to survive summary judgment. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006); *see also Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013) ("In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed[,] and all justifiable inferences are to be drawn in his favor.") (internal quotation and citation omitted). Accordingly, the Court will **DENY** summary judgment on the retaliatory termination claims.

#### 2.   Retaliatory Harassment

Based on the undisputed facts, summary judgment is proper on Frazier's retaliatory harassment claim. Even if Frazier has set forth evidence of an adverse employment action, he has not set forth evidence of causation.

The Third Circuit recognizes a retaliation claim based on a hostile work environment. *See Jensen v. Potter*, 435 F.3d 444, 448 (3d Cir. 2006), overruled in part on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). To set forth a prima facie case of retaliatory harassment, a plaintiff must demonstrate "(1) she engaged in protected activity, (2) she was subject to 'materially adverse' action against her, and (3) there was a causal connection between her protected activity and the employer's action. *Seybert v. International Group, Inc.*, No. 7-3333, 2009 WL 722291, at *20 (E.D. Pa. Mar. 17, 2009) (citing

---

[1] The parties agree that the governing law is substantially the same for each count. Def.'s Br. at 6 n.2, ECF No. 48; Pl.s' Br. at 3-4, ECF No. 51.

*Moore*, 461 F.3d at 340-41). Timing alone cannot establish causation unless the period between the protected act and the retaliatory act is "unusually suggestive of retaliatory motive." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (internal citation and quotation omitted).

Frazier argues that four acts, when considered in the aggregate, constitute a materially adverse employment action. First, Frazier was given 24-7 on-call responsibilities. Second, Frazier was required to install a database without the proper training. Third, after Frazier raised concerns about having to perform projects without the necessary training, Ortiz said: "You know, you need to stop smiling or I'll give you something to smile about." Frazier Dep. at 162:24-163:17). Fourth, BBB changed Frazier's schedule so that he was working one hour more each day than his peers.

It is clear that when Frazier's on-call schedule was changed, he was not being treated differently from similarly situated co-workers, from his predecessor, or from his successor. The Court does not dispute that a change in Frazier's hours was unwelcome. But viewed in context, the schedule change was not retaliatory harassment. Moreover, when the Court aggregates the schedule change with Ortiz's threat and the imposition of a tight deadline, the Court does not find that retaliatory harassment occurred. *See Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1297 (3d Cir. 1997), overruled on other grounds by *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006) ("[Not every] insult, slight, or unpleasantness gives rise to a valid Title VII claim.").

The last act Frazier alleges to be retaliatory was changing his daily work hours from 8 a.m. to 5 p.m. Frazier claims that his work hours were originally 9 a.m. to 5 p.m. DSF ¶ 39. On December 16, 2008, when Frazier learned about the changes to his on-call schedule, he was told that his workday would begin at 8 a.m., not 9 a.m. Frazier Tr. 115:1-15, 116:24-117:1. Frazier claims that the change in hours was retaliatory because he was made to work one hour more per day than his colleagues. As an initial matter, there is no indication that Frazier had firsthand knowledge of his colleagues' schedules. If Frazier's testimony was secondhand or speculative, the Court may not consider it for summary judgment purposes. *See Wertheimer v. Singer*, No. 6-6233, 2009 WL 197515, at *1 (D.N.J. Jan. 26, 2009) (citing *Olympic Junior, Inc. v. David Crystal, Inc.*, 463 F.2d 1141, 1146 (3d Cir. 1972) ("Conclusory statements, general denials, and factual allegations not based on personal knowledge [are] insufficient to avoid summary judgment."). The firsthand testimony in the record indicates that Frazier's testimony about his colleagues was incorrect and not based on personal knowledge. *See* Del Rey Declaration, ECF No. 53-2; Thomas Declaration, ECF No. 53-3; McHugh Declaration, ECF No. 53-4; Newton Declaration, ECF No. 53-1.

But even if the Court were to accept that Frazier was made to work longer hours than his colleagues, summary judgment would still be proper based on a failure to establish causation. Frazier's work hours were changed on December 16, 2008. Frazier Transcript 116:24-117:25. The only protected activity pre-dating that change was Frazier's complaint to Ortiz about the Rubin email on November 5, 2008. The five week gap between the complaint and the schedule change is not, by itself, "unusually suggestive of retaliatory motive." *Id.*; *see Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two months not unusually suggestive); *Carmody v. Pa. State Univ.*, No. 5-1645, 2007 WL 1074862, at *8 (M.D. Pa. Apr. 9, 2007) (one month not unusually suggestive). As Frazier offers no other evidence of causation, the Court will **GRANT** summary judgment on the retaliation claims alleging retaliatory harassment.

### B.  CLAIMS AGAINST NEWTON

In Counts II, IV, and VI, Frazier asserts retaliation claims against Newton. In Count VII, Frazier asserts that Newton aided and abetted a violation of the NJLAD. As with Frazier's claims against BBB, Frazier's claims against Newton proceed under two theories: retaliatory termination and retaliatory harassment. Newton moves for summary judgment on all counts.

#### 1.  Retaliation

Frazier argues that Newton is liable for the same retaliation violations as BBB. First, Frazier argues that Newton is liable for Frazier's termination. Second, Frazier argues that Newton is liable for retaliatory harassment. The Court finds that summary judgment is proper on the retaliatory harassment theory but not on the retaliatory termination theory.

For the reasons set forth in Section III.A.2, Frazier has failed to set forth evidence of retaliatory harassment. Accordingly, the Court will **GRANT** summary judgment in Newton's favor on Counts II, IV, and VI to the extent they allege retaliatory harassment.

Next, the Court will **DENY** summary judgment on the retaliatory termination theory. Individuals are directly liable for retaliatory termination under Section 1981 if they "intentionally caused [their employer] to infringe on [plaintiff's] Section 1981 rights, or if they authorized, directed, or participated in the alleged discriminatory conduct." *Al-Khazraji v. St. Francis College*, 784 F.2d 505, 518 (3d Cir. 1986).[2] There is no evidence that Newton authorized or directed

---

[2] Newton does not argue that the standard for individual liability is different under Title VII or the NJLAD.

Frazier's termination. But a jury could conclude that Newton participated in the termination. One day before Frazier was fired, Frazier met with Newton for his performance review. During that meeting, Newton acknowledges, Frazier complained that his performance review was retaliatory. The next business day, Frazier met with Newton and DePrima. At that meeting, Frazier claims he was told: "We can – we feel that we can no longer trust you because of filing EEOC complaints." Crediting Frazier's account, a reasonable jury could conclude that Newton participated in the termination.

### 2. Aiding and Abetting Retaliation

Count VII asserts a claim against Newton for aiding and abetting violations of the NJLAD. Defendants move for summary judgment on this claim, arguing that Newton did not knowingly assist a violation of the NJLAD or exhibit deliberate indifference to a violation of the NJLAD.

Aiding and abetting liability under the LAD can be active or passive. *See Lopez-Arenas v. Zisa*, No. 10-2668, 2012 WL 933251, at *8 (D.N.J. Mar. 19, 2012). "To establish the former—the active—form of aiding and abetting liability, a plaintiff must show that (1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; and (3) the defendant must knowingly and substantially assist the principal violation." *Id.* (internal citations omitted). "To establish the latter—the passive—form of aiding and abetting liability, a plaintiff mush show that the supervisor holds a duty to act against harassment and yet remains deliberately indifferent to its existence." *Id.* Frazier does not argue that Newton should be liable for passive aiding and abetting. Instead, he focuses on active aiding and abetting.

Here, a jury can find that BBB is liable for a single principal violation: retaliatory termination. Accordingly, to the extent Frazier's aiding and abetting claim concerns retaliatory harassment, the Court will **GRANT** summary judgment in Newton's favor. However, to the extent Frazier's aiding and abetting claim concerns Newton's role in Frazier's termination, the Court will **DENY** summary judgment. For the reasons described in the previous section, a jury could find that Newton actively aided and abetted a violation of the NJLAD. Specifically, a jury could conclude that Newton aided a wrongful act (Frazier's termination) that Newton was generally aware of his role, and that Newton knowingly and substantially assisted the principal violation.

### C. ADVERSE INFERENCE

Defendants argue that Frazier spoliated notes he took in his meeting with Newton and DePrima. Defendants ask the Court to impose an adverse inference that the allegedly destroyed evidence "stated the true non-discriminatory reason that Frazier was given for his termination." Defs.' Br. at 26. As Defendants' spoliation charge rests on disputed facts, the Court will not impose an adverse inference at this time.

Spoliation is "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably forseeable litigation." *Mosaid Technologies Inc. v. Samsung Electronics Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004) (quoting *Zubulake v. UBS Warburg LLC*, No. 2-1243, 2004 WL 1620866, at *15 (S.D.N.Y. July 20, 2004)). The movant bears the burden of establishing spoliation. *Williams v. Klem*, No. 7-1044, 2010 WL 3812350, at *2 (M.D. Pa. Sept. 22, 2010). "Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and costs." *Id.* An adverse inference will issue based on spoliation when "the destroyed evidence might or would have been unfavorable to the position of the offending party." *Scott v. IBM Corp.*, 196 F.R.D. 233, 248 (D.N.J. 2000). To impose an adverse inference, the Court must conclude that: "(1) the evidence was within the party's control; (2) there was an actual suppression or withholding of evidence; (3) the evidence was destroyed or withheld was relevant to the claims or defenses; and (4) it was reasonably foreseeable that the evidence would be discoverable." *Gatto v. United Air Lines, Inc.*, No. 10-1090, 2013 WL 1285285, at *3 (D.N.J. Mar. 25, 2013) (citing *Mosaid*, 348 F. Supp. 2d at 336).

In his deposition, DePrima testified that Frazier took notes on the back of a business card while he was being terminated. It is undisputed that Frazier failed to produce the business card in discovery. But Frazier denies taking notes on the business card. Newton's deposition testimony appears to confirm Frazier's account. Asked to describe what occurred at the termination meeting, Newton said nothing about Frazier's note taking.

For an adverse inference to issue, Defendants must establish spoliation. To establish spoliation, Defendants must demonstrate that the business card was "relevant to the claims or defenses" at issue in the case. If Frazier took notes on the business card, it was most likely relevant; if Frazier did not take notes on the business card, the business card was irrelevant. Given the factual dispute about whether Frazier took notes on the business card, Defendants have not demonstrated that the business card contained information relevant to this case. Accordingly, the

9

Court will **DENY** the request for an adverse inference. The Court will be willing to revisit the issue at trial. *See Williams v. Klem*, No. 7-1044, 2010 WL 3813250, at *3 (M.D. Pa. Sept. 22, 2010) (deferring spoliation ruling to trial where underlying facts were contested).

### IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment is **GRANTED IN PART** and **DENIED IN PART**. The Court will **DENY** summary judgment for both Defendants on Counts II, IV, and VI to the extent the counts allege retaliatory termination. The Court will **GRANT** summary judgment for both Defendants on Counts II, IV, and VI to the extent the counts allege retaliatory harassment. The Court will **GRANT** summary judgment for Newton on Count VII to the extent the count alleges aiding and abetting retaliatory harassment, and it will **DENY** summary judgment on Count VII to the extent the count alleges aiding and abetting retaliatory termination.

The Court will **DENY** the request for an adverse inference.

Finally, the as Frazier does not contest the dismissal of his hostile work environment claims, the Court will **DISMISS** Counts I, III, and V with prejudice.

    /s/ William J. Martini
    **WILLIAM J. MARTINI, U.S.D.J.**

**Date: April 29, 2013**